# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| JANE DOE, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>GEORGIA DEPARTMENT OF )<br>CORRECTIONS, et al., )<br>)<br>    Defendants. )<br>) | CIVIL ACTION NO. 5:12-CV-386 (MTT) |

## ORDER

Before the Court is the Motion to Dismiss filed by Defendants Georgia Department of Corrections, Brian Owens, Timothy Ward, Randy Tillman, Kathy Seabolt, Kathleen Kennedy,[1] and Frederick Mitchell, in his official capacity.[2] (Doc. 6). For the following reasons, the Motion is **GRANTED in part**. As outlined below, the Plaintiff has **10 days from the entry of this Order** to amend her Complaint.

## I. Background

The Plaintiff alleges that, while incarcerated at Arrendale State Prison in October 2010, she was sexually assaulted by Defendant Frederick Mitchell, who at the time was a correctional officer there. (Doc. 1, ¶¶ 11-12). Specifically, she accuses Mitchell of forcing her to have unprotected vaginal intercourse on October 10, 2010. (Doc. 1, ¶

---

[1] Kennedy is identified as "Kathren Kennedy" in the Plaintiff's Complaint. That is apparently incorrect. (*See* Doc. 6-1 at 1).

[2] Defendant Mitchell, who is represented by separate counsel, did not join this Motion to Dismiss in his individual capacity. He has already filed an Answer to the Plaintiff's Complaint. (Doc. 5).

12). Mitchell resigned his position in lieu of termination November 2, 2010. (Doc. 1, ¶ 13). Two days after Mitchell resigned, the Plaintiff reported the assault to Defendant Kennedy.³ (Doc. 1, ¶ 14). The Plaintiff was taken to prison medical facilities and provided medical and mental health evaluations, as well as pregnancy and STD tests. (Doc. 1, ¶ 14). The Plaintiff was later called back to the medical facilities to receive her test results. She was prescribed an antibiotic and told all was well. (Doc. 1, ¶ 15). The Plaintiff subsequently filed a grievance about the incident and asked for mental health assistance and to meet with internal affairs. (Doc. 1, ¶ 16). Thereafter, the state transferred her to Pulaski State Prison where, upon reviewing her medical records, she discovered the medical tests had actually revealed the presence of "streppocous, group B."⁴ (Doc. 1, ¶ 17). The Plaintiff then tried to kill herself by ingesting a number of pills. She alleges this suicide attempt was a direct result of the rape and subsequent harassment. (Doc. 1, ¶ 18).

The Plaintiff has now filed this lawsuit. She names as Defendants the Georgia Department of Corrections (DOC); DOC Commissioner Owens, in his official capacity; Assistant DOC Commissioner Ward, in his official and individual capacities; DOC Facilities Director Tillman, in his official and individual capacities; Arrendale State Prison Warden Seabolt, in her official and individual capacities; Arrendale State Prison Warden of Security Kennedy, in her official and individual capacities; and former Corrections

---

³ Given that Mitchell was allegedly forced to resign before the Plaintiff reported the rape, it is not clear to what extent, if any, his resignation is related to the Plaintiff's alleged assault.

⁴ The Court presumes the Plaintiff intended to write "streptococcus, group B," a bacterium that in adults can cause bloodstream infections, pneumonia, skin and soft-tissue infections, and bone and joint infections. *See Group B Strep Infection in Adults*, CENTERS FOR DISEASE CONTROL AND PREVENTION, http://www.cdc.gov/groupbstrep/about/adults.html (last visited Jan. 7, 2013).

Officer Mitchell, in his official and individual capacities. The Plaintiff brings her claims pursuant to 42 U.S.C. § 1983, arguing the Defendants violated her Eighth and Fourteenth Amendment rights under the United States Constitution through a custom and practice of deliberately failing to secure and protect her personal safety. She additionally asserts against all Defendants, but Mitchell, § 1983 claims alleging that her rights were violated by the Defendants' failure to provide adequate and appropriate staffing, training, and education for correctional officers. Finally, the Plaintiff alleges the Defendants' conduct violated her state constitutional rights to due process and to not be subjected to cruel and unusual punishment or abuse while in prison. *See* Ga. Const. art. I, § 1, ¶¶ I, XVII.

## II. Discussion

### A. Motion to Dismiss Standard

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain specific factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006). However, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*,

297 F.3d 1182, 1188 (11th Cir. 2002). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### B. Federal Official Capacity Claims and Federal Claims Against the Georgia DOC

The Plaintiff's federal official capacity claims and federal claims against the Georgia DOC may be dismissed on either Eleventh Amendment immunity grounds or because they are not proper § 1983 claims. Unless waived, "[t]he Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (internal citation removed). Similarly, § 1983 requires action by a "person," and because of Eleventh Amendment immunity, "a State is not a person within the meaning of § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 63 (1989). The term "State" in this instance includes state officials sued in their official capacities. *Id.* at 71.

The Plaintiff agrees her official capacity claims for *damages* should be dismissed pursuant to the Eleventh Amendment as well as § 1983. (Doc. 8 at 2, 3). She argues, however, that because Eleventh Amendment immunity may be overcome when a plaintiff seeks prospective injunctive relief,[5] her official capacity claims should remain pending for that purpose. This argument is without merit. The Plaintiff has not requested injunctive relief. Moreover, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately

---

[5] *See Graham*, 473 U.S. at 169 n.18.

proves, a real and immediate – as opposed to a merely conjectural or hypothetical – threat of *future* injury." *Wooden v. Board of Regents of University System of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001). "Logically, 'a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past.'" *Id.* Thus, the Plaintiff's prayer for "such other and further relief as the Court deems just," (Doc. 1 at 9), which she claims adds injunctive relief to the mix, is at best a request for relief from any hypothetical injury that might or might not reveal itself during the course of litigation. It does not, as the Plaintiff would suggest, allege a real and immediate threat of future injury and cannot be construed as a claim for injunctive relief. Nor would an injunction be appropriate to address the past harm of the alleged rape. Accordingly, all of the Plaintiff's federal official capacity claims and her claim against the Georgia DOC are **dismissed in their entirety**.

### C. State Constitutional Claims

Georgia's Eleventh Amendment immunity also applies to "'a federal suit against state officials on the basis of state law …when…the relief sought and ordered has an impact directly on the State itself.'" *Doe v. Moore*, 410 F.3d 1337, 1350 (11th Cir. 2005) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Moreover, the state waives this immunity "only as provided by the Legislature in a tort claims act or an act of the Legislature which specifically provides that sovereign immunity is waived and sets forth the extent of such waiver." *Johnson v. Georgia Dept. of Human Resources*, 278 Ga. 714, 715 (2004). *See also* O.C.G.A. § 50-21-23(b) ("The state does not waive any immunity with respect to actions brought in the courts of the United States."). No such waiver applies here. Thus, the Plaintiff's state constitutional

claims asserted against the Defendants in their official capacity cannot stand. Accordingly, these claims are **dismissed**. Moreover, the Plaintiff now asserts that her "complaint does not allege a violation of state law." (Doc. 8 at 3). Thus, regardless of the application of sovereign immunity, to whatever extent the Plaintiff may initially have alleged state constitutional claims against any Defendant in any capacity, the Court deems these claims abandoned and therefore **dismissed**.

### D. Individual § 1983 Claims

With the Georgia DOC and Defendant Owens dismissed entirely, and with all state and federal official capacity claims dismissed, the Court turns to the Plaintiff's § 1983 claims asserted against the remaining Defendants in their individual capacities.[6] In Count One, the Plaintiff argues the Defendants followed a custom and practice of deliberately failing to keep her safe while she was in their custody. In Count Two, the Plaintiff contends the Defendants did not adequately staff, train, and educate Arrendale State Prison personnel.

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Accordingly, the standard for holding liable a supervisor in his individual capacity for a subordinate's actions is "extremely rigorous." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). The supervisor must have personally participated in the alleged constitutional violation or there must be a causal connection between his actions and the alleged violation. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). To establish causation, a plaintiff must present (1) evidence sufficient to support an

---

[6] Not including, of course, any individual capacity claims against Defendant Mitchell.

inference that the supervisor directed the subordinate to act unlawfully or that he knew the subordinate would act unlawfully and then failed to stop him from doing so; (2) evidence of a custom or policy that results in a deliberate indifference to the plaintiff's constitutional rights; or (3) evidence of a history of widespread abuse that put the supervisor on notice to correct the alleged deprivation, and that he failed to do so. *West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007). Notice is insufficient unless the deprivations are "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.* at 1329.

In this case, the Plaintiff has not suggested Defendants Ward, Tillman, Seabolt, or Kennedy personally participated in her alleged rape. That means the Plaintiff must allege some causal connection between the Defendants' actions and her harm. This she has failed to do. The Complaint does not contain allegations permitting an inference that the Defendants directed Mitchell to act as he did or that they knew he would act unlawfully. The only Defendant who the Plaintiff factually ties to her assault is Defendant Kennedy, the warden of security to whom the Plaintiff reported the rape and turned over letters Mitchell allegedly wrote. But this has no bearing on the cause of the Plaintiff's injury. These events occurred after and in response to the alleged rape. Similarly, although the Plaintiff states Kennedy, as well as Seabolt, "knew or should have known" the assault had occurred, such knowledge would have been acquired after the fact and cannot have caused the Plaintiff's rape. The Complaint contains no hint that either knew in advance that Mitchell would engage in such behavior.

The Complaint is further devoid of facts suggesting the existence of a custom or policy that reveal the Defendants' deliberate indifference to the Plaintiff's constitutional rights.

> [A] policy is a decision that is … created by an official of such rank that he or she could be said to be acting on behalf of the municipality. A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law. Demonstrating a policy or custom requires show[ing] a persistent and wide-spread practice.

*Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007) (internal citations and quotation marks removed). The failure to train may also serve as an actionable policy or custom against a supervisory official, but "'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [subordinate employees] come into contact.'" *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). In such cases, deliberate indifference arises when the need for more or different training is obvious – such as when there has been a history of abuse by subordinates or when the failure to train is likely to result in a constitutional violation. *Williams v. Limestone Cnty., Ala.*, 198 Fed. Appx. 893, 896 (11th Cir. 2006); *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1398 (11th Cir. 1994).

Here, the Plaintiff makes only the base accusation that the Defendants followed some custom or practice of deliberate indifference to her safety. But she provides no facts that could indicate a persistent and widespread practice, written or unwritten, that might have led to her rape. There is nothing from which to infer how this theoretical custom was defined. Similarly, the Plaintiff provides no facts to support the charge that the Defendants failed to adequately train Arrendale State Prison personnel. For

example, there is no allegation of a history or pattern of Arrendale State Prison guards committing sexual assaults that would render obvious to the Defendants a need for different or additional training. Nor are there any other facts suggesting their subjective knowledge of a threat to the Plaintiff's constitutional rights that training might have cured. The Plaintiff does not even make clear which of these Defendants had the authority or means to provide for such training. The Plaintiff makes only the conclusory allegation that the Defendants failed to provide proper staffing, training, and instruction to correctional officers. And conclusory allegations on their own do not state a claim for relief.

Accordingly, the Plaintiff has **10 days from the entry of this Order** to amend her Complaint to allege with greater specificity facts sufficient to support individual capacity § 1983 claims against Defendants Ward, Tillman, Seabolt, and Kennedy. If the Plaintiff chooses to amend her Complaint, the Court will schedule oral argument to allow the parties to address the newly alleged facts. If the Plaintiff declines to amend her Complaint, or is unable to marshal factual allegations robust enough to meet the requisite pleading standards,[7] her § 1983 individual capacity claims will be dismissed without prejudice.[8]

### III. Conclusion

In sum, the federal official capacity claims against each Defendant, and the federal claims against the Georgia DOC, are **dismissed** pursuant to Fed. R. Civ. P.

---

[7] That standard is most certainly *not* set by *Conley v. Gibson*, 355 U.S. 41 (1957), which the Plaintiff quoted in her response to the Defendants' Motion. Plaintiff's counsel is advised to review *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their progeny.

[8] Because the Court is providing the Plaintiff time to amend her Complaint, it does not at this time address the Defendants' qualified immunity defense.

12(b)(1) as barred by the Eleventh Amendment and their incongruence with § 1983's definition of "person."  The state constitutional claims against each Defendant in their official and individual capacities are likewise **dismissed** pursuant to Fed. R. Civ. P. 12(b)(1) in light of the Defendants' Eleventh Amendment immunity and the Plaintiff's abandonment of her state law claims.  Finally, the Court postpones a final ruling on the Defendants' Motion to Dismiss § 1983 claims against Defendants Ward, Tillman, Seabolt, and Kennedy in their individual capacities.  The Plaintiff has **10 days from the entry of this Order** to amend her Complaint.

      **SO ORDERED**, this 8th day of January, 2013.

                                        S/ Marc T. Treadwell
                                        MARC T. TREADWELL, JUDGE
                                        UNITED STATES DISTRICT COURT